IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALERIE KEYS et al. | : | CIVIL ACTION |
| | : | NO. 15-4253 |
| v. | : | |
| | : | |
| ALLSTATE PROPERTY AND | : | |
| CASUALTY INSURANCE COMPANY | : | |

O'NEILL, J.                                                                                              February 7, 2017

**MEMORANDUM**

This case arises out of defendant Allstate Property and Casualty Insurance Company's denial of coverage to plaintiff Valerie Keys for water damage to her home that occurred on July 27, 2014.[1] I conducted a bench trial on January 25, 2017. Having considered the documentary evidence and testimony, I make the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). Because I find that the damage to plaintiff's home was not covered by her insurance policy, I will enter judgment in favor of defendant with respect to plaintiff's claim for breach of contract.

**FINDINGS OF FACT**

**I.      2011 Roof Repair**

Plaintiff testified that around 2011 she replaced her roof for $2,900. Tr. at 19:2–4 (Keys). She testified she did so because her neighbor had done the same and inspired her. Tr. at 18:7–19:11 (Keys). Plaintiff did not have receipts or invoices describing this work. Tr. at 47:2–

---

[1]     Plaintiff Beneficial Bank (previously Conestoga Bank) joined this action seeking to recover any proceeds from this litigation against plaintiff's mortgage debt. The parties do not dispute Beneficial Bank's claim against defendant, which is conditional on plaintiff Keys establishing liability under the insurance contract. Because I find in defendant's favor, I do not discuss issues relating to Beneficial Bank in this memorandum.

10 (Keys).  Plaintiff did not testify to whether she determined she had a need to replace her roof before undertaking the replacement.

## II.    Interior Damage

On July 27, 2014, plaintiff returned from vacation to find that water had penetrated her home at 5638 North 18th Street in Philadelphia.  Tr. at 12:1, 20:6–22:22 (Keys).  On the top floor, the carpet, the curtains in the master bedroom, the towels in the bathroom and the clothes in the closet were all wet.  Tr. at 22:2–22 (Keys).  The paint on the ceilings in several rooms was peeling.  Tr. at 22:2–4, 22:17–22 (Keys).  Plaintiff, who had lived in that home for 37 years, had not discovered water damage like this before.  Tr. at 22:23–23:3 (Keys).

The day she discovered the water in her home, she also saw evidence of a recent storm in her neighborhood.  Tr. at 26:5–11 (Keys).  She saw that fallen branches from a large tree on her neighbor's property had been gathered into a pile her neighbor's yard.  Tr. 24:16-20 (Keys).  This tree is near plaintiff's property and the branches hang over her roof.  Tr. at 23:20–22, 24:1–20 (Keys).

Plaintiff had insured her home with Allstate against "loss to the interior of a building structure, or covered property inside, caused by rain . . ." but only if "wind or hail first damages the roof or walls and the wind forces rain . . . through the damaged roof or wall."  Pl.'s Ex. 1 (Allstate Property Insurance Company Policy No. 928925341) at 8.  This policy was in effect at the time of plaintiff's loss.  Tr. at 43:13–15 (Weinberg); Def.'s Pretrial Mem. at ECF p. 5 (agreeing to stipulate to this fact); Pl.'s Pretrial Mem. at ECF p. 3 (same).

## III.   First Roof Inspection

Plaintiff contacted Allstate to seek coverage for her losses.  Tr. at 23:12–13 (Keys).  Allstate told her they would send someone to look at the damage to her property.  Tr. at 26:13–14

(Keys).  On September 9, 2014, plaintiff contracted with Metro Public Adjustment to represent her in her negotiation of her claim with Allstate.  P-3 (Contract between Keys and Metro, Sept. 9, 2014); Tr. at 31:16–19, 34:13–20 (Keys) (describing the date of contract as September 2, 2014).

Plaintiff testified that someone from Metro came to her home and put tarps on her roof.  Tr. at 33:20–24 (Keys).  She also testified that she does not remember who these people were or what date this occurred.  Tr. at 50:17–24, 51:23–52:2, 52:18–24 (Keys).  She testified that, on this occasion, she observed a pile of branches on her lawn, some of which were very large, that the people who had installed the tarp on her roof had removed.  Tr. at 39:3–40:10 (Keys).

Allstate frequently contracts with RJE Home Remodeling Company to inspect homes when claims are filed.  Tr. 64:12–13 (McNaney).  RJE sent Michael McNaney, a claim inspector with over ten years of relevant experience and an HEG certification for evaluating storm damage to homes, to inspect plaintiff's home on September 23, 2014.  Tr. at 62:16–63:2, 67:4–5 (McNaney).  In the course of inspecting plaintiff's roof, McNaney found that between 10 and 20 percent of the roof was covered by tarps that were nailed to the roof.  Tr. at 71:1–14 (McNaney); 102:1–8; 110:21–111:4.  Concerned that removing the tarps would damage the roof, he looked under the corners of the tarps and otherwise inspected the rest of the visible roof.  Tr. at 72:2–4 (McNaney).

During this inspection, McNaney found no openings in the roof that were caused by wind or rain.  Tr. at 75:9–77:10 (McNaney).  He found "no evidence of wind lifting or any other storm related damage."  Pl.'s Ex. 13 (Roof Inspection Report, Sept. 23, 2014).  He noted rather that:

> [t]he rolled roofing on the right partition wall around the tarps is decayed with large openings.  The chimney located in the middle of the right partition wall has decayed tar around the flashing area.  The tar is pulled away from the bricks and this has left a large open

3

> area around the chimney. I inspected a small portion underneath the tarp and found decayed rolled roofing on the partition wall under this area. The rolled roofing along the rear and front walls is also decayed with large open seams. The partition wall roofing needs to be replaced to ensure no further leaking. The rolled roofing needs to be replaced (due to its age) to ensure no future leaking.

Id. The "large openings" to which McNaney refers in his report were over a foot long. Tr. at 96:23–97:4 (McNaney). McNaney estimated that these openings could have developed over the course of three months and up to two years before his inspection. Tr. at 104:21–105:6 (McNaney). In contrast to plaintiff's testimony that she replaced her roof in 2011, McNaney found that, though tar on the roof appeared to have been laid within the last five years, the roof itself was 18 to 20 years old. Tr. 68:23–69:9, 112:14–24, 113:15–23 (McNaney). McNaney saw no evidence that large branches had fallen from plaintiff's neighbor's tree. Tr. at 74:6–21 (McNaney).

## IV.  Second Roof Inspection

Allstate property adjuster Clare Erskine reviewed Mr. McNaney's report and determined that McNaney should reinspect plaintiff's roof to ensure there was no evidence of storm damage under the tarps. Tr. at 137:19–138:20 (Erskine). On October 29, 2014, McNaney and Allstate claims adjuster Blake Ingraham arrived at plaintiff's property. Tr. at 77:11–14, 78:20–21 (McNaney). McNaney removed the tarps on the roof and inspected underneath them. Tr. at 79:7–16 (McNaney). Plaintiff was present during this inspection and spoke with Ingraham but neither she nor Ingraham went on the roof. Tr. at 37:24–38:22 (Keys); Tr. at 77:15–16, 78:11–12 (McNaney).

Again, McNaney found no evidence that the roof had been damaged by tree branches, falling debris or any other wind- or storm-related occurrence. Tr, at 78:22–79:6, 79:10–80:22 (McNaney). He saw no large branches, bark, scrapes, punctures or other evidence of impact. Tr.

at 74:6–21, 80:20–81:20 (McNaney).  He found that the rolled roofing was protruding outward, which suggested decay rather than damage from a puncture.  Tr. at 82:17–83:5 (McNaney).  McNaney did not create a second report, but he drew a diagram and took additional photographs.  Def.'s Ex. 6 (Photo Sheet); Tr. at 110:10–20 (McNaney).

The day after McNaney's second inspection, Allstate sent plaintiff a letter denying her coverage under her policy.  Pl.'s Ex. 12 (Letter from Blake Ingraham to Valerie Keys, Oct. 30, 2014); Tr. at 37:6–13 (Keys).

Plaintiff had not discovered any water infiltration to her home after the damage from the July storm. Tr. at 33:20–22.  After repeatedly having the tarps replaced or re-affixed to her roof in 2014 and 2015, plaintiff had her son and her son's friend repair the roof.  Tr. at 36:3–18 (Keys).  This was approximately a year after she discovered the leak.  Tr. at 50:5–12 (Keys).

At some point in the spring of 2015, Metro sent plaintiff a letter explaining that it would no longer represent her in her claim against defendant.  Tr. 53:24–54:3 (Keys).  Defendant never compensated plaintiff for the damage to her home.  Tr. at 43:3–7, 44:17–19 (Keys).  She then brought this suit against defendant for breach of contract.

## V.     Credibility Determinations

Pursuant to Rule 52(a), the court, as fact-finder, must weigh evidence, make credibility determinations, and draw all reasonable inferences from the evidence.  Fed. R. Civ. P. 52(a); Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 856 (1982) ("[Rule 52(a) recognizes the] unique opportunity afforded the trial judge to evaluate the credibility of witnesses and to weigh the evidence.").

I find defense witness McNaney credible in his testimony that plaintiff's roof was between 18 and 20 years old.  I do not find it credible that plaintiff decided to replace her roof in

2011 simply because her neighbor had done so and without first determining that her roof was in need of repair. I find that plaintiff merely re-tarred her roof around 2011 rather than replacing it.

I also find McNaney credible in his testimony that openings in plaintiff's roof were not caused by wind or by tree branches that fell due to wind but rather by decay. Plaintiff provides no testimony from anyone who went onto her roof and observed the damage. She merely provides her own testimony that she saw large branches removed from her roof at some point in the fall and that she had not previously had water damage to her home. I do not infer from her testimony that wind caused large branches to puncture her roof when compared to McNaney's testimony to the contrary.

## CONCLUSIONS OF LAW

To succeed on her breach of contract claim under Pennsylvania law, plaintiff must establish, by a preponderance of the evidence, "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003), quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). The parties agree that a contract, with essential terms, existed between the parties. They dispute whether defendant breached by refusing to pay plaintiff for the damage to her home.

In order to show defendant's denial of coverage was a breach of its contractual obligations, plaintiff must establish by a preponderance of the evidence that wind damaged the roof of her home before forcing rain inside. See Pl.'s Ex. 1 (Allstate Property Insurance Company Policy No. 928925341) at 8 (providing coverage for interior damage only if "wind or hail first damages the roof or walls and the wind forces rain . . . through the damaged roof or wall"). I find that plaintiff has not proven that wind damaged her home before the rain damaged

her home's interior.  Thus, she has not proven that the damage to her home fell within the coverage of her insurance policy.  Therefore, I will enter judgment in favor of defendant and against plaintiff.[2]

An appropriate Order follows.

---

[2] Prior to trial, defendant filed a motion in limine to exclude the testimony of Roger Williams, an estimator who would testify to the extent of the damage to plaintiff's home, on the basis that plaintiff did not timely disclose her intention to call this witness. Dkt. No. 41 (Def.'s Mot. in Limine); Dkt. No. 44 (Pl.'s Answer to Def.'s Mot. in Limine).  I allowed Williams to testify and committed to resolving the motion in limine if I could not decide the case without his testimony.  Tr. at 7:10–15.  Because I do not find defendant liable, I do not need to consider the admissibility of Williams's testimony, which goes to damages.  Therefore, I will dismiss defendant's motion as moot.